UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOBBY JO M.,[1] | ) | CIVIL ACTION NO. 4:22-CV-889 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

Bobby Jo M. ("Plaintiff"), an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision must be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On December 8, 2016, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 60; Doc. 13-3, p. 5). In these applications, Plaintiff alleged she became disabled on September 26, 2016. *Id.* These claims were denied that the initial level of review, and Plaintiff requested and was granted a hearing.

On December 11, 2018, Administrative Law Judge Paula Garrety ("ALJ Garrety") issued a decision denying her applications. Plaintiff did not appeal that decision. (Admin. Tr. 308; Doc. 13-6, p. 3).

On March 17, 2020, Plaintiff protectively filed a second round of applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 13; Doc. 13-2, p. 14).  In these applications, Plaintiff alleged she became disabled on December 7, 2018, when she was 37 years old, due to the following conditions: spondyloarthritis (inflammatory arthritis affecting the spine), type 2 diabetes, high blood pressure, fibroid in uterus,

asthma, nerve pain, depression, and heart burn. (Admin. Tr. 311; Doc. 13-6, p. 6). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, follow instructions, and use her hands. (Admin. Tr. 342; Doc. 13-6, p. 37). Plaintiff also alleges that her impairments affect her memory. *Id.* Plaintiff has a high school education. (Admin. Tr. 28; Doc. 13-2, p. 29). Before the onset of her impairments, Plaintiff worked as a cashier, hospital cleaner, and housekeeper/cleaner. (Admin. Tr. 28; Doc. 13-2, p. 29).

On July 2, 2020, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 13; Doc. 13-2, p. 14). On January 25, 2021, Plaintiff's applications were denied on reconsideration. *Id.* On March 24, 2021, Plaintiff requested an administrative hearing. *Id.*

On August 12, 2021, Plaintiff, assisted by her attorney, appeared and testified during a telephone hearing before Administrative Law Judge Michelle Wolfe ("ALJ Wolfe"). *Id.* On August 26, 2021, ALJ Wolfe issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 30; Doc. 13-2, p. 31). On September 2, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review ALJ Wolfe's decision. (Admin. Tr. 273; Doc. 13-4, p. 130).

On April 1, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 13-2, p. 2).

On June 6, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that ALJ Wolfe's 2021 decision denying the applications is "not supported by substantial evidence, and improperly applies the law and regulation." (Doc. 1, ¶ 8). As relief, Plaintiff requests that the Court award benefits, or remand this matter for further hearing. (Doc. 1, p. 2).

On August 10, 2022, the Commissioner filed an answer. (Doc. 12). In the answer, the Commissioner maintains that the decision denying Plaintiff's application is correct, was made in accordance with the law, and is supported by substantial evidence. (Doc. 12, ¶ 8). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 14), the Commissioner's Brief (Doc. 19), and Plaintiff's Reply (Doc. 20 ) have been filed.  On May 18, 2022, the Commissioner filed a notice, advising the Court that the Third Circuit's recent opinion in *Mattei v. Comm'r of Soc. Sec.*, is pertinent to the issues raised in this case. (Doc. 22). Plaintiff responded that the decision in *Mattei* is not pertinent to this case. (Doc. 23). The Commissioner requested and was granted leave to reply to Plaintiff's response.

(Docs. 24, 25). Plaintiff filed a partial objection to the reply. (Doc. 27). This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the familiar legal principles governing Social Security Appeals.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[2] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[4] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[5] But in an adequately developed factual record, substantial evidence may be "something less than the

---

[2] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[3] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[4] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[5] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[6] In determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[7]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla. *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It

---

[6] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[7] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[8]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[9] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[10]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett* [*v. Comm's of Soc. Sec. Admin.*], we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d [112, 119 (3d Cir. 2000]. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of

---

[8] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[9] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[10] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[11]

## B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[12] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[13] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last

---

[11] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[12] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[13] 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

insured.[14]  Unlike disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act.[15]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[16]  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[17]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[18]  In making this assessment, the ALJ considers

---

[14] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[15] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).

[16] 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

[17] 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

[18] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[19]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[20]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[21]

## IV.   DISCUSSION

Plaintiff raises the following issues in her statement of errors:

(1)   At Step 5, there are direct conflicts between the DOT's job descriptions for assembler of small parts and ticket seller, and the ALJ's RFC for Ms. Mull limiting her to, inter alia, no fast-paced production work such as conveyor belt work or quota-based work, and no interaction with the public, respectively (Tr. 22).

Specifically, per the DOT, the assembler of small parts requires working on an assembly line to mass produce small products.

---

[19] 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).
[20] 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a); *Mason*, 994 F.2d at 1064.
[21] 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ticket seller job requires constant talking (2/3 or more of the time) to the public.

(2)     The RFC assessment is defective because it is not supported by any medical opinion about Plaintiff's physical functional capacity.

(3)     The ALJ erred in failing to articulate how persuasive she found the prior December 2018 ALJ ruling.

(Doc. 14, p. 4).

We will begin out analysis by summarizing the 2018 and 2021 ALJ decisions, and then will address each of Plaintiff's arguments.

A.     ALJ GARRETY'S DECEMBER 2018 DECISION DENYING PLAINTIFF'S APPLICATIONS

In her December 2018 decision, ALJ Garrety found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2021. (Admin. Tr. 63; Doc. 13-3, p. 8). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, ALJ Garrety found that Plaintiff did not engage in substantial gainful activity at any point between September 26, 2016, (Plaintiff's alleged onset date) and December 11, 2018, (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 63; Doc. 13-3, p. 8).

At step two, ALJ Garrety found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: osteoarthritis,

inflammatory spondyloarthritis, type 2 diabetes mellitus, obesity, neurocognitive disorder, and depression. *Id.* She did not identify any non-severe or non-medically determinable impairments. *Id.*

At step three, ALJ Garrety found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Between steps three and four, ALJ Garrety evaluated Plaintiff's RFC. ALJ Garrety found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except:

> She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk for 4 hours and sit for 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, and crouch. She can occasionally crawl. She must avoid exposure to extremes of heat and cold. She must avoid concentrated exposure to wetness, humidity, vibration, hazardous machinery, and heights. The work must afford her reasonable access to/opportunity for bathroom breaks. The work must not involve detailed or complex instructions, and instead must be confined to routine, repetitive tasks, with no assembly line production work, no more than occasional contact with the public and coworkers, and few work changes.

(Admin. Tr. 67; Doc. 13-3, p. 12).

Page 12 of 28

At step four, ALJ Garrety found that Plaintiff could not perform any past relevant work. (Admin. Tr. 73; Doc. 13-3, p. 18).

At step five, ALJ Garrety found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 73-74; Doc. 13-3, pp. 18-19). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three occupations: Packer, DOT #920.687-082; Inspector/Sorter, DOT #559.687-058; and Assembler, DOT #712.687-010. *Id.*

## B.   ALJ WOLFE'S AUGUST 2021 DECISION DENYING PLAINTIFF'S APPLICATIONS

In her August 2021 decision, ALJ Wolfe found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2022. (Admin. Tr. 16; Doc. 13-2, p. 17). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, ALJ Wolfe found that Plaintiff did not engage in substantial gainful activity at any point between December 7, 2018, (Plaintiff's alleged onset date) and August 26, 2021, (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 16; Doc. 13-2, p. 17).

At step two, ALJ Wolfe found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: unspecified psychosis, anxiety disorder, unspecified depressive disorder, schizoaffective disorder with cluster b traits, mild intellectual disability, inflammatory spondyloarthritis, and osteoarthritis. *Id.* ALJ Wolfe also identified the following medically determinable non-severe impairments: hypertension, thrombocytosis reactive, morbid obesity, status post breast reduction, dyslipidemia, asthma, obstructive sleep apnea, a fatty liver, gastroesophageal reflux disease, diabetes mellitus with neuropathy, sinusitis, upper respiratory infection, urinary tract infection/cystitis, pyelonephritis, dysuria, bronchitis, a rash, uterine fibroid, allergic rhinitis, synovial cyst of right popliteal space, gastroparesis, dysfunction of the Eustachian tubes, hernia, intertrigo, dermatitis, amenorrhea, status post hysteroscopy D&C for uterine bleeding and uterine leiomyomata, candida infection, congenital nevus, viral syndrome, tonsillitis, tobacco use disorder, thrush, odynophagia, angular cheilitis, dysphagia, kidney stones, acute kidney injury, sepsis, oroantral fistula, headaches, disorder of refraction and accommodation, conjunctivitis, photophobia, and COVID 19. (Admin. Tr. 16-17; Doc. 13-2, pp. 17-18). ALJ Wolfe found that personality disorder was not a medically determinable impairment. *Id.*

At step three, ALJ Wolfe found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18-22; Doc. 13-2, pp. 19-23).

Between steps three and four, ALJ Wolfe assessed Plaintiff's RFC. ALJ Wolfe found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) with the following additional limitations:

> The claimant is limited to jobs, which allow for a sit/stand option, with each interval up to 1 hour each time, but not off task when transferring. She is further limited to no more than frequent crouching, crawling, stooping, kneeling, and climbing but occasional climbing of ladders, ropes, scaffolds. Also, she is limited to frequent exposure to temperature extremes of cold and heat, humidity, and vibrations. From a mental standpoint, the claimant can do simple routine tasks, but no detailed or complex tasks, in low stress work environment defined as occasional decision making and occasional changes in work setting, and no fast pace production work such as conveyor belt work or quota based work. In addition, she is limited to no more than occasional interaction with coworkers and supervisors, and no interaction with the public.

(Admin. Tr. 22; Doc. 13-2, p. 23).

At step four, ALJ Wolfe found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 28; Doc. 13-2, p. 29).

At step five, ALJ Wolfe found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 28-29; Doc. 13-2, pp. 29-30). To support her conclusion, ALJ Wolfe relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three occupations:  Garment Sorter, DOT #222.687-014; Ticket Seller, DOT #211.467-030; and Assembler Small Parts, DOT #706.684-022. *Id.*

### C.   THE PARTIES AGREE THAT THERE IS NO APPARENT UNRESOLVED CONFLICT AS TO THE GARMENT SORTER JOB

In her brief, Plaintiff argues that there are apparent and unresolved conflicts between the limits set out in the RFC assessment and the requirements of two out of three jobs identified by the VE. She argues that there is an unresolved conflict as to the ticket seller position because it would require "frequent" social interaction. She argues that there is an unresolved conflict as to the assembler of small parts position because it would require Plaintiff to work on an assembly line.

In response, the Commissioner argues that, even if the Court were to find that these conflicts were 'apparent' and 'unresolved,' the remaining occupation of garment sorter is enough to satisfy the Administration's burden at step five.

In her reply, Plaintiff agrees that one job remains at step five, and states, "this case comes down to whether there are other errors within the ALJ's decision that

show the ALJ's finding that [Plaintiff] can perform the sole job of garment sorter is not supported by substantial evidence." (Doc. 20, p. 2). The parties appear to agree that this argument, standing alone, is not a basis for remand. Therefore, we will not address its merits.

### D.   ALJ WOLFE FASHIONED AN RFC ASSESSMENT THAT INCLUDED MORE PHYSICAL RESTRICTIONS THAN THE STATE AGENCY CONSULTANT ASSESSMENTS

Plaintiff alleges she has arthritis that affects her back and other joints. She asserts that this condition causes pain. During her administrative hearing, Plaintiff testified she could stand for up to twenty minutes without pain or discomfort. (Admin. Tr. 46; Doc. 13-2, p. 47). In a function report she stated she could walk up to fifteen minutes at one time due to pain, and sit for up to thirty minutes at one time due to pain. (Admin. Tr. 342; Doc. 13-6, p. 37).[22]

ALJ Wolfe acknowledged medically determinable severe impairments of inflammatory spondyloarthritis, and osteoarthritis. ALJ Wolfe observed that

---

[22] Plaintiff's mother also submitted statements about Plaintiff's physical limitations. She said she spent about one-fourth of each day with Plaintiff, and that during those visits they typically watch television, walk around in the yard, sit in the shade, and talk. (Admin. Tr. 323; Doc. 13-6, p. 18). She reported that Plaintiff's impairment affected her ability to sit and stand, but did not articulate any specific limitation. (Admin. Tr. 328; Doc. 13-6, p. 23). She reported that Plaintiff could walk for up to ten minutes at one time before she needed to take a break. *Id.*

Plaintiff received treatment for these conditions. She provided the following summary of Plaintiff's medical treatment, and the objective findings made during that treatment, in her decision:

> Claimant's rheumatology treatment record from January of 2020 notes that her prior visit with them was in August of 2018. When she was seen in January, the claimant reported that she has been off the prescribed Enbrel for six months, and was experiencing one to two hours of morning stiffness in her SI joints and hips, as well as stiffness in her hands. Physical examination at that time noted tenderness in the MCPs and PIPs, trace synovitis, tender SI joints, and tender ankles, with her wrists, elbows, shoulders, neck, hips, knees, and feet all being noted as normal. Considering the same, the claimant was prescribed Humira (Exhibits B1F/210, 213).

> While the claimant was prescribed Humira in January of 2020, the record reflects that she did not start taking it until mid May. A phone visit with her in July of 2020, notes that she was tolerating the Humira with no problems. She also reported that while she continues to have pain in her lower back and SI joints and bilateral grater trochanters that her morning stiffness had decreased from three hours to two hours (Exhibits B2F/46, 51). In addition to the Humira prescribed by rheumatology, claimant's personal care physician prescribed her Diclofenac Sodium to apply topically to her back and hips in August of 2020 (Exhibit B2F/30). Moreover, on August 26, 2020, the claimant advised rheumatology that she continued to tolerate the Humira with no side effects (Exhibit B2F/8). Furthermore, when the claimant was contacted in April of 201 [sic] for medication management, she said that while she has some good days and bad days, things are stable on the Humira (Exhibit B6F/73).

> Relative to her osteoarthritis, the claimant reported to her doctor on January 7, 2021, that she had left knee pain after wrestling and playing with children, which was radiating down both sides of her knee. Physical examination at that time noted minimal effusion in the left knee without warmth or erythema, some pain with flexion, but no

tenderness to palpation and no clubbing or cyanosis. She was also noted to have an antalgic gait. When seen by orthopedics the following day, the claimant was noted to have medial and lateral joint line tenderness and tenderness at the inferior pole of the patella, with no ligament abnormalities, no crepitus, and no strength (Exhibits B6F/127-129, 131). Further, an x-ray taken at that same time noted mild osteoarthritis (Exhibit B6F/241).

The next visit relative to the claimant's left knee is not until April of 2021, at which time she reported ongoing problems with her left knee, specifically when she engages in activities such as bowling. Physical examination at that time reflected decreased range of motion with tenderness, but no MCL, LCL or patellar tendon tenderness (Exhibits B6F/63, 68).

(Admin. Tr. 23-24; Doc. 13-2, p. 24-25).

At the initial stage of administrative review, state agency consultant James Stephan Butcofskii, M.D. ("Dr. Butcofskii"), acknowledged that Plaintiff's physical impairments were non-severe except for obesity, but did not offer a function by function RFC assessment. Instead, he provided the following narrative assessment:

ALLEGED     AND     NON-ALLEGED     IMPAIRMENTS: spondyloarthritis, DMII, HBP, fibroid in uterus, asthma, nerve pain, depression, anxiety and heart burn.

ADL's: dresses daily does all H/H chores, bathes self daily, drives a car shops and pays bills living w/ family. Walks w/o assistive device and wears glasses. BMI 43.8kg/m2.

11/25/19—Geisinger PE BP 149/86. Ht. 5'4" Wt. 265 lbs. BMI 45.61. GAIT normal, motor normal.

Claiants [sic] condition other than for her weight is non severe

(Admin. Tr. 84; Doc. 13-3, p. 29).

On reconsideration, state agency medical consultant Toni Jo Parmelee, D.O., ("Dr. Parmelee") found that all of Plaintiff's medically determinable physical impairments were non-severe. In doing so, she provided the following assessment:

> 39 y/o woman alleges spondyloarthritis, Type 2 DM, HBP, fibroid in uterus, asthma, nerve pain, depression, anxiety and heart burn.
>
> 3441 Change in conditions, onset 7/3/2020. Conditions listed in allegations have worsened. States she suffers from constant abd pain and spends the day lying down to relieve symptoms. No new conditions.
>
> 12/2/2020 CT ABD/PELVIS: No acute findings. Duplicate left renal collecting system with chronic atrophy of the left lower pole of the left kidney. Enlarged lobular uterus with probable large fibroid in the fundus.
>
> 12/7/2020 PCP Phone call: Seen in the ER for left flank pain. Discharged with dx acute cystitis without hematuria. Given Toradol for pain, fosfomycin. Cultures returned negative, UA unremarkable.
>
> The prior administrative medical findings from the initial level are evaluated and found partly supportable and consistent based on the longitudinal medical evidence, opinions given by the claimant's own medical sources, and statements made by the claimant.
>
> Medical evidence not available at the time of the first determination is evaluated and incorporated into the present determination of limitations. This previously unavailable medical evidence may account for any changes made in this determination which differ from the first evaluation
>
> The opinions provided by acceptable medical sources within the MER have been given appropriate consideration in this evaluation.
>
> Impairments non-severe.

Page 20 of 28

(Admin. Tr. 111-112; Doc. 13-3, pp. 56-57).

ALJ Wolfe found that both of these assessments were not persuasive, reasoning that Plaintiff's pain had a "more than minimal" impact because she had some treatment during the relevant period, had some tenderness, had some pain with range of motion in her knee, and was prescribed medication. She nonetheless concluded that the record was inconsistent with Plaintiff's allegation that her pain was so severe it made it impossible for her to sit, stand or walk for more than short periods of time. She explained that physical examination findings "were not particularly adverse" as Plaintiff had a normal gait, no muscle weakness, and no atrophy. She also considered Plaintiff's statements describing the ability to perform a wide array of activities, including taking care of her own personal needs independently, taking care of her pets, preparing simple meals, doing light housework for up to three or four hours per day, shopping in stores, running errands for her mother, riding her bike for 20-30 minutes per day, and going bowling once in a while.

Plaintiff argues that substantial evidence does not support ALJ Wolfe's RFC assessment, limiting Plaintiff to "light" work because there was no physical functional assessment from a physician about Plaintiff's ability to sit, stand, or walk. She contends that ALJ Wolfe's RFC assessment contradicts her "testimony that she

can only stand for 15-20 minutes without pain or discomfort . . . and that she has left other jobs such as a cashier at Walmart and Dollar General because she could not tolerate the standing requirements." (Doc. 4, p. 8). Plaintiff does not cite to any medical evidence that is inconsistent with ALJ Wolfe's assessment.

In response, the Commissioner argues that ALJ Wolfe was not required to solicit a "matching" medical opinion, and that ALJ Wolfe's assessment of Plaintiff's ability to sit, stand, and walk is supported by the longitudinal record.

It is well-established that an ALJ is not permitted to set his own expertise against that of a physician who presents competent evidence.[23] Courts have found that an ALJ "seemingly interpreted the medical evidence of record, and substituted [his or her] own opinion for that of a medical one," in cases where an ALJ is not persuaded by medical opinion or prior administrative medical findings, and instead sets an RFC based on his or her own lay interpretation of objective evidence.[24] For example, in *McKay v. Colvin*, the Court found an ALJ's RFC limiting a claimant to light work was not supported where all medical opinions about the claimant's

---

[23] *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

[24] *McKay v. Colvin*, No. 3:14-CV-2020, 2015 WL 5124119, at *17 (M.D. Pa. Aug. 13, 2015).

physical limitations limited the claimant to sedentary or below sedentary work *and* did not explain what opinion she relied on.

*McKay*, however, is distinguishable from this case. Unlike *McKay*, the record in this case includes two assessments from medical sources, neither of which imposed any sitting, standing, or walking limitation. ALJ Wolfe did not substitute her opinion for that of a medical expert. Instead, she included additional limitations based on evidence added to the record after the state agency assessments were issued. Courts have generally upheld ALJ decisions where an ALJ imposes additional limitations beyond those set out in a medical opinion based on new evidence.[25] Further, Plaintiff does not cite to any objective medical evidence that supports her testimony that her ability to sit, stand, and walk is significantly limited. Accordingly, we find that substantial evidence supports ALJ Wolfe's RFC assessment, and are not persuaded that remand is required because ALJ Wolfe's

---

[25] *See e.g. Chandler v. Comm'r of Soc Sec.*, 637 F.3d 356 (3d Cir. 2012) (finding substantial evidence supported an ALJ's RFC assessment where the ALJ "gave significant weight" to a source's assessment but added additional restrictions to account for intervening developments in the record); *Titterington v. Barnhart*, 174 F. App'x 6 (3d Cir. 2006) (finding there is no legal requirement that a physician have made the particular findings that the ALJ adopts in the RFC assessment, in a case where the ALJ's RFC assessment was reasonable and "went further" than the physician's opinion in some respects).

Page 23 of 28

RFC assessment does not "match" the physical RFC assessments provided by the state agency consultants.

**E.    EVEN ASSUMING ALJ WOLFE WAS REQUIRED TO CONSIDER ALJ GARRETY'S 2018 DECISION, ALJ WOLFE'S FAILURE TO EXPLAIN HOW IT WAS CONSIDERED IN THIS CASE DOES NOT REQUIRE REMAND**

In 2018 ALJ Garrety found that Plaintiff was limited to standing and/or walking up to four hours per eight-hour day. In 2021, ALJ Wolfe found Plaintiff was limited to standing and/or walking up to six hours per eight-hour day.

Plaintiff contends that ALJ Wolfe did not discuss the difference between the two RFCs, and that this failure requires remand because ALJ Wolfe did not explain why the relevant and probative 2018 RFC was rejected. To support her position, Plaintiff relies on several unreported district court cases.[26]

In response, the Commissioner argues that ALJ Wolfe was not required to discuss ALJ Garrety's decision in this case because the two decisions involved different periods of time, and because it is the longstanding policy of the Social Security Administration "to consider unadjudicated periods *de novo*, and not to

---

[26] *Carlson v. Saul*, Civ. No. 19-1008, 2020 WL 2490021, at *2 (W.D. Pa. May 14, 2020); *Zavilla v. Astrue*, Civ. No. 09-133, 2009 WL 3364853 (W.D. Pa. Oct. 16, 2009); *Dias v. Saul*, Civ. No. 17-1812, 2019 WL 4750268, at *7 (M.D. Pa. Sept. 30, 2019); *Soli v. Astrue*, Civ. No. 8-3483, 2010 WL 2898798, at *6 (E.D. Pa. July 22, 2010); *Krokus v. Colvin*, Civ. No. 13-389, 2014 WL 31360, at *1 n. 1 (W.D. Pa. Jan. 2, 2014)).

consider findings made by prior ALJs concerning previous periods as evidence in later claims." (Doc. 19, p. 27) (citing AR 00-1(4), 2000 WL 43774, at *3).

The parties agree that ALJ Wolfe is not bound by ALJ Garrety's 2018 RFC assessment. The Third Circuit recently held in a non-precedential decision that "nothing in the text, structure, history, or purpose of the Social Security regulations requires an ALJ, reviewing a claim for an unadjudicated period, to give preclusive effect to an earlier administrative finding on a different claim concerning a different time period."[27]

The parties disagree about whether the 2018 decision is considered "evidence" for the purpose of evaluating a temporally distinct claim, and whether ALJ Wolfe was required to "weigh" or discuss ALJ Garrety's 2018 RFC assessment when deciding a temporally distinct claim. The Third Circuit has not addressed this issue in a precedential decision.[28] We need not, however, decide whether and to what

---

[27] *Mattei v. Comm'r of Soc. Sec.*, No. 22-2721, 2023 WL 3479567 (3d Cir. May 16, 2023); *see also Krokus*, 2014 WL 31360.

[28] In *Mattei*, the Third Circuit addressed whether an ALJ's prior decision has a binding preclusive effect. It did not directly address whether that prior decision qualified as "evidence," because the ALJ in *Mattei* addressed the prior ALJ's findings and expressly found that they were only "partially" persuasive. Some of the language in the opinion, however, suggests that the Circuit does not consider a prior ALJ's findings on a temporally distinct application to be "evidence" that warrants consideration or discussion in a subsequent claim. *Mattei*, 2023 WL 3479567, at *1 ("nothing in the [SSA's] regulations compels adoption or even consideration of a prior-found fact by an ALJ who decided a temporally distinct disability claim.").

Page 25 of 28

extent consideration of the 2018 decision was required. Even assuming that ALJ Garrety's decision is "evidence" under the Commissioner's regulations, ALJ Wolfe's failure to discuss it in this case would not require remand.

The ALJ has no obligation to address every piece of evidence in the record.[29] To hold otherwise would impose an unreasonable and impractical burden. Nonetheless, there is an expectation that the ALJ "consider all pertinent medical and non-medical evidence and 'explain [any] conciliations and rejections.'"[30] As the Fourth Circuit Court of Appeals observed in *Albright v. Comm'r of Soc. Sec.,* the issue of whether a particular piece of evidence is "pertinent" is a heavily fact-

---

Before the opinion in *Mattei* was issued, the District Courts in this Circuit have found that previous ALJ decisions can be relevant. *See e.g.*, *Krokus*, 2014 WL 31360 (W.D. Pa. Jan. 2, 2014) ("The earlier findings are relevant, of course, but lack preclusive effect."). The Fourth, Sixth, and Ninth Circuits have similarly concluded that prior ALJ decisions about temporally distinct claims can be relevant to a subsequent ALJ decision. *See Kimberly H. v. Kijakazi*, No. 22-CV-00417, 2023 WL 4450131, at * (D.D.C. July 11, 2023) (noting that, although the Fourth, Sixth, and Nineth Circuits take different approaches to this issue, they agree that a prior ALJ's findings *can* be important and probative in some cases).

[29] *Hurr v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

[30] *Burnett*, 220 F.3d at 122 (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

dependent issue.[31] Turning to the facts of this case, we find that ALJ Garrety's 2018

decision is not especially pertinent to the 2021 ALJ decision.[32] Therefore, ALJ

Wolfe was not required to discuss it.

---

[31] *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999). For example, in *Lively v. Sec'y of Health & Hum. Servs.*, an ALJ found the claimant was capable of no more than "light" work, and issued a decision to that effect two weeks before the claimant's fifty-fifth birthday. *Lively v. Sec'y of Health & Hum. Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987). Had that RFC been applied when the claimant was fifty-five, he would have been found disabled under a grid rule in 20 C.F.R. Part 404, Subpt. P. Appendix 2. When the claimant applied for benefits at age fifty-five, however, a second ALJ concluded he was capable of "medium work." The Fourth Circuit remanded the ALJ's decision, noting that it was "utterly inconceivable" that the claimant's condition had so improved in two weeks as to enable him to perform medium work. Later it elaborated that, to hold otherwise in that case "would have thwarted the legitimate expectations of claimant—and, indeed, society at large—that final agency adjudications should carry considerable weight," and that "judicial ratification of the SSA's 'bait-and-switch' approach to resolving Lively's claim would have produced a result reasonably perceived as unjust and fundamentally unfair." *Albright*, 174 F.3d at 478. This case, however, is distinguishable from the type of situation that was present in *Lively*.

[32] We acknowledge that the prior relevant period ended just as the new relevant period began, and that the two periods overlap by a few days. Despite this overlap, however, we are not persuaded that the 2018 ALJ decision is probative in *this* case.

In 2018, ALJ Garrety relied on a non-examining state agency consultant's assessment that was based on evidence available on or before the claim was initially denied (April 24, 2017). (Admin. Tr. 60, 70-71; Doc. 13-3, pp. 5, pp. 15-16). In November 2017, Plaintiff was diagnosed with "back pain secondary to breast hypertrophy," and she had a bilateral breast reduction in January 2018 to address that back pain. (Admin. Tr. 70-71; Doc. 13-3, pp. 15-16). Thus, the primary support for ALJ Garrety's RFC assessment is both outdated, and made less relevant by a significant intervening medical development relevant to Plaintiff's primary physical impairment. Moreover, in the 2021 decision, the ALJ did acknowledge there was a

Moreover, substantial evidence supports the RFC assessment in the 2021 decision. The evidence in the 2021 record demonstrates that Plaintiff did not see a rheumatologist at any point between August 2018 and January 2020 (a period of 17 months), and stopped taking medicine prescribed for her arthritis (Embrel) in June 2020. (Admin. Tr. 23; Doc. 13-2, p. 24). Although Plaintiff was prescribed new medication (Humira) in January 2020, she did not start taking that medication until May 2020. *Id.* Both of the state agency medical consultants reached a conclusion that Plaintiff's arthritis was non-severe. ALJ Wolfe's RFC assessment is considerably more restrictive than any medical assessment from the relevant period. Accordingly, we find that substantial evidence supports the ALJ's decision.

## V.   CONCLUSION

For the reasons explained herein, we conclude that:

(1)   The final decision of the Commissioner will be AFFIRMED.

(2)   Final judgment will be issued in the Commissioner's favor.

(3)   An appropriate order will be issued.

Date: September 26, 2023                         BY THE COURT

                                                *s/William I. Arbuckle*
                                                William I. Arbuckle
                                                U.S. Magistrate Judge

---

prior decision, suggesting it was given some consideration even though the RFC findings it contained were not discussed. (Admin. Tr. 13; Doc. 13-2, p. 14).